**Danell L. MEINDERS, Plaintiff and Appellee,**

v.

**Thomas R. MEINDERS, Defendant and Appellant.**

No. 13081.

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1981.

Decided May 6, 1981.

Rehearing Denied June 12, 1981.

Thomas J. Farrell of Willy, Pruitt, Mat-thews, Farrell, Frankman & Johnson, Sioux Falls, for plaintiff and appellee.

John L. Wilds, Sioux Falls, for defendant and appellant.

MARTIN, Circuit Judge.

Plaintiff was granted a divorce from de-fendant on the grounds of extreme cruelty. Defendant appealed from the judgment re-garding the division of the property and debts and the award of alimony. We af-firm.

The parties were married on December 27, 1974. A divorce was granted on February 15, 1980. The duration of the marriage was therefore approximately five years. At the time of trial, plaintiff was thirty-eight years of age; the record does not reflect defendant's age. Plaintiff had two children by a previous marriage, ages seventeen and fifteen.

When plaintiff and defendant were married, plaintiff owned some land in Elko, Nevada; a lot in Florida; an interest in some partnership property in California; a car; part interest in her former home in Hawaii; and a savings account of approximately $7,700. Defendant brought into the marriage some furniture and a car.

The health of the parties apparently was good. Regarding the parties' competency to earn a living, plaintiff graduated from Sioux Falls College with a degree in social work and psychology. However, she did not work during the course of the marriage at the request of defendant, who did not want her to work as it would put him in a higher tax bracket. Defendant is a stockbroker and is presently employed as manager of the Sioux Falls office of an investment banking firm. In 1978 and again in 1979, defendant earned in excess of $50,000. Further, defendant was expected to earn for the year 1980 the sum of $38,000.

The parties had accumulated, during the course of the marriage, a home in Brandon, South Dakota, a 1975 Dodge van camper, furniture and fixtures and household goods and two certificates of deposit, the latter to be held for the benefit of plaintiff's children. Excluding the mortgage on the home, the parties had incurred debts in excess of $35,000.

Regarding the contribution of each party to the accumulation of the said property, plaintiff, in addition to keeping house, making meals and doing the normal housewife chores, contributed $15,000 towards a downpayment on the purchase of the home and for some initial improvements on the home. Defendant basically contributed his earnings.

The record reflects several other relevant factors. As part of the divorce decree in Hawaii concerning her first marriage, plaintiff was awarded the home. The decree provided that if she did not sell the Hawaii home prior to September 1980, her two children would be awarded 100% of the net profit. If the house was sold prior to September 1980, plaintiff's former husband was to receive 40% of the net proceeds, with plaintiff to receive the balance. In 1976, defendant insisted that plaintiff sell the house in Hawaii and retain all of the proceeds in violation of the Hawaii court order and purchase a residence in Sioux Falls with the money. At defendant's insistence, the house was sold and plaintiff received $29,000 in net proceeds, giving her former husband none of that amount. Plaintiff's former husband learned of the sale and started legal proceedings in Hawaii. The court in Hawaii has since entered a judgment against plaintiff in favor of the former husband for approximately $16,000. From the $29,000 realized from the Hawaii property sale, plaintiff purchased two certificates of deposit for the children in the total sum of $10,000. As stated, $15,000 of the proceeds was used towards a downpayment on the purchase of a house in Brandon and on initial improvements. Plaintiff also gave $3,000 of the proceeds to defendant to invest in the stock market. Plaintiff had earlier given defendant her $7,700 in savings to invest in the stock market. The record reflects that defendant made various purchases and transfers of stock, mainly in the high risk area, and at the time of the trial the stocks were worthless.

After the parties purchased the home in Brandon, defendant wanted to borrow more money for improvements and talked plaintiff into borrowing more funds and using the children's certificates of deposit as security. Plaintiff was reluctant to do this but was advised by defendant that if she loved him and trusted him, she would let him manage the money. Defendant further threatened to leave plaintiff if she refused to mortgage the certificates of deposit. In addition to this, plaintiff discovered that defendant was using construction

loans for living expenses and to facilitate his excessive bar life and late night activities. Further, defendant refused to go to counseling.

The parties separated and then resumed living together in the summer of 1978 but again started experiencing financial problems, due mainly to defendant's after-hours activities. Defendant refused to tell plaintiff about the finances and demanded that he be left in charge of the finances. Defendant's conduct drove plaintiff to an attempted suicide. In November 1979, defendant advised plaintiff that he did not love her anymore and for her to go get herself an attorney and that he was not coming home.

The parties' home in Brandon has been foreclosed upon. The trial judge ordered it to be sold. The record reflects that the home was worth approximately $80,000; deductions from that figure include a mortgage of $54,900, late charges and taxes of $2,250, a lien of $3,000, real estate fees of $6,000, and a construction loan in the amount of $12,300 secured by the children's certificates of deposit, leaving a net profit of around $1,550. If the home should be sold for less than $80,000, there may very well be a net loss; in any event, plaintiff would not be able to recover her $15,000 investment. Regarding the other properties, plaintiff was awarded furniture and household goods and other items amounting to approximately $2,500. Defendant was awarded certain furniture and household goods as well as the 1975 Dodge van camper for a total value of $3,975. It must be stated, however, that the camper was mortgaged in the approximate sum of its value. The trial court also awarded to plaintiff the land in Port Malibar, Florida; the land in Elko, Nevada; and her interest in the California partnership property, all of which properties plaintiff brought into the marriage. Plaintiff also received the two certificates of deposit which were taken out for the benefit of her children.

The trial court also ruled that plaintiff should incur and be responsible for debts in excess of $11,000, and that defendant incur and be responsible for debts in excess of $24,000. The trial court also required defendant to pay attorney fees of $750.

In addition to the above, the trial court awarded plaintiff alimony of $750 a month, the first monthly installment to be due for the month of February 1980, and to continue until her youngest child reaches the age of eighteen or is emancipated, if that is earlier. At the time of the termination of the alimony as above indicated, the trial court will reassess the alimony situation on motion of plaintiff and as the needs and abilities of the parties dictate. As stated, plaintiff's youngest child was fifteen at the time of the divorce.

■ In reviewing the division of property and the award of alimony, the trial court has broad discretion in making such provision and granting such award, and we will not modify or set them aside unless it clearly appears that the trial court abused its discretion. *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979). Although a trial court has broad discretion, we have enumerated further factors which should be considered in the division of marital assets. These factors are:

> [T]he duration of the marriage, value of the property, the ages of the parties, the parties' state of health and competency to earn a living, the contribution of each party to the accumulation of the property, and the income-producing capacity of the parties' assets. *Hansen*, supra, at p. 751.

Other cases holding for the same proposition include *Johnson v. Johnson*, 300 N.W.2d 865 (S.D.1980); *Buseman v. Buseman*, 299 N.W.2d 807 (S.D.1980); *Cooper v. Cooper*, 299 N.W.2d 798 (S.D.1980); *Clement v. Clement*, 292 N.W.2d 799 (S.D.1980); *Michael v. Michael*, 287 N.W.2d 98 (S.D.1980); and *Wall v. Wall*, 260 N.W.2d 644 (S.D. 1977).

In addition to the above factors, fault continues to be a consideration in making an award of alimony. *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980).

■ Without enumerating each, we find the record is replete with evidence that all these factors were properly presented to and considered by the trial court. We do not believe that the trial court abused its discretion in entering its judgment regarding property division or alimony award. In making an equitable division of property, a trial court is not bound by any mathematical formula but is to make the award on the basis of the material factors in the case, having due regard for equity and the circumstances of the party. Further, and specifically regarding alimony, fault is a consideration, and one which is amply shown in this case.

■ Plaintiff has requested that defendant be required to pay additional attorney fees for the defense. of this appeal. We find this to be a reasonable request and require that defendant pay the additional sum of $500 for attorney fees.

The judgment of the trial court is modified to include an award of $500 to plaintiff for attorney fees on appeal. As so modified, the judgment is affirmed.

WOLLMAN, C. J., and MORGAN, J., concur.

DUNN, J., concurs specially.

HENDERSON, J., dissents.

MARTIN, Circuit Judge, sitting for FOSHEIM, J., disqualified.

DUNN, Justice (concurring specially).

I concur in the result of this case.

We have held that the issues of child support, property settlement, and alimony should be treated separately as different standards apply. *Price v. Price*, 278 N.W.2d 455 (S.D.1979). However, I am prepared to accept the statement of the trial court that the alimony will be re-appraised upon the "youngest child reaching majority" as setting a time for re-appraisal rather than a confusion of alimony and child support. I would join in affirming the judgment.

HENDERSON, Justice (dissenting).

I would reverse and remand.

The decree of divorce, entered on February 15, 1980, provided, inter alia:

That plaintiff is entitled to alimony in the sum of $750.00 per month commencing February 1, 1980 [sic] and payable on the first of each month thereafter until plaintiff's youngest child, Mark Lewis, reaches the age of 18 years or is emancipated, whichever occurs first. At that time the Court will reassess alimony as the needs and abilities of the parties dictate. That said alimony payments shall be paid through the Minnehaha County Clerk of Courts.

Less than one year prior to the entry of this decree, this Court stated in *Price v. Price*, 278 N.W.2d 455, 458 (S.D.1979):

Although we recognize that awarding alimony and child support payments are in the trial court's discretion, we must stress that alimony and child support are separate concepts.

We also stated in *Price* at 459:

Inasmuch as the alimony and award fluctuated with the child support, we must remand the alimony award to the trial court for further consideration based solely upon a suitable allowance to plaintiff independent of the child support consideration.

True, plaintiff's child, Mark Lewis, was not the child of defendant. True, defendant was not required by the decree to support plaintiff's child. And true, defendant owed no legal obligation whatsoever to support this child. Why, then, did the trial court patently intertwine the payment of alimony with the child's attainment of eighteen years of age or his emancipation? There is no doubt that the express monthly payment of $750 alimony, under the decree, will terminate when defendant's stepson fulfills one of these two conditions. Such an alimony award is contrary to *Price* and not a factor which should be considered. In determining the amount of alimony payments, this Court has expressed the factors to be considered in *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980), and *Guindon v. Guindon*, 256

N.W.2d 894 (S.D.1977). A stepson's attainment of majority or emancipation is not one of the factors to be considered and the trial court's judgment in this regard is oppressive, wrong, and contrary to the settled law of this state. It appears that the trial court mixed together an alimony and property settlement award. In a circuitous way, the trial court either awarded child support unto plaintiff requiring defendant to pay support for a minor to whom he owed no legal obligation and/or provided a property settlement by making a very high monthly alimony award.

It strikes me that an alimony award of $750 per month for a marriage that lasted approximately five years is excessive and, under the circumstances of this case, constitutes an abuse of discretion. A trial court's discretion is a judicial discretion, not an uncontrolled one, and its exercise must have a sound and substantial basis in the testimony. SDCL 25–4–44; *Fink v. Fink*, 296 N.W.2d 916 (S.D.1980); *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979). Defendant proposed a finding of fact concerning plaintiff's obtainment of a college degree, which required three years of college study during the five-year marriage and enabled her to secure favorable employment. No finding of any kind was entered with respect thereto as the trial court chose to ignore this critical factor. Rather, the trial court riveted in on defendant's resources. Therefore, it must be assumed that the trial court did not consider plaintiff's recent educational pursuits at all which most certainly bears upon "the competency to earn a living." The majority opinion accepts the factual proposition that "the health of the parties was good." If, indeed, plaintiff enjoys good health and has a good education, why does she require a $750 monthly alimony award? Alimony should not be awarded for sympathy or for the able-bodied and well-educated who refuse to work. "Alimony is not a matter of right. When the wife has the ability to earn a living, it is not [proper legal policy] to give her a perpetual lien on her divorced husband's future income." *Morgan v. Morgan*, 59 Wash.2d 639, 642, 369 P.2d 516, 518 (1962). *See also Young v.*

*Young*, 371 Mich. 447, 124 N.W.2d 264 (1963); *Miles v. Miles*, 185 Or. 230, 202 P.2d 485 (1949); *Schwent v. Schwent*, Mo.App., 209 S.W.2d 546 (1948); *Branson v. Branson*, 190 Okl. 347, 123 P.2d 643 (1942). It is good to work and the courts should not harbor those who spurn it.

It was during plaintiff's college life, which was time framed within her married life, that she drifted into alcoholism. She graduated from Sioux Falls College in 1978 and was treated at the Mandan, North Dakota, Alcoholic Rehabilitation Center that same year. Prior to the parties' marriage, plaintiff had lived for many years in the Orient and, from 1968 to 1974, worked in bars from Hickom AFB Club, Hawaii, to the Sky Lane Inn and Sansa Bar, Aurora, Colorado. Defendant first met plaintiff at said Sansa Bar. Six months later the parties were married. Plaintiff had suffered a previous broken marriage. In September of 1979, plaintiff attempted suicide. I question highly that defendant should solely bear the blame for this suicide attempt in light of the circumstances of plaintiff's life prior to this marriage and the circumstances of this marriage. There is no finding of fact to buttress the majority opinion's finding to this effect. Although plaintiff's attempt on her own life was foiled, this dramatic episode should not be considered as a sympathy factor or any other factor in arriving at an alimony award.

Finally, I take general exception to the majority opinion's expression that defendant caused plaintiff to refrain from employment during the marriage. For, indeed, Finding of Fact XIII duly entered by the trial court provides: "That plaintiff is unemployed and has been unemployed for years and has been unable to secure employment."

The alimony award of $750 per month cries out for reversal; the mixing of the alimony award with the child's emancipation and/or property award clouds the lower court's rationale to such an extent that it deviates from the settled law of this state. I would therefore also reverse the property award so that it may be adjudicated with a

fresh viewpoint towards equity. Lacking companions or associates in my dissent, I issue my solitary cry.