**Donald R. BALTZER, Plaintiff and Appellant,**

**v.**

**Joan C. BALTZER, Defendant and Appellee.**

**No. 15641.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 8, 1987.

Decided April 13, 1988.

Russell D. Kading of Moore, Rasmussen, Kading & McGreevy, Sioux Falls, for plaintiff and appellant.

Mary Lou Jorgensen Gubbrud of Pruitt, Matthews & Muilenburg, Sioux Falls, for defendant and appellee.

BERNDT, Circuit Judge.

Donald R. Baltzer appeals from a judgment and decree of divorce entered November 25, 1986. We affirm the valuation and division of property and the award of attorney fees but reverse in part on the alimony award.

## STATEMENT OF FACTS

Donald and Joan were married January 23, 1976, in Sioux Falls, South Dakota. No children were born of this tumultuous marriage. At the time of trial, Donald was 48 years of age and Joan was 43. With the exception of some minor health problems of Joan's, both parties were in good health.

Donald is an architect, having far greater earning capacity than Joan, who has worked in sales and as a secretary. Donald earns approximately $35,000 a year and has a monthly take-home pay of about $2,000. With her job experience and high school education, Joan is capable of earning $10,000 a year. Donald worked as an architect throughout the course of the marriage, and Joan worked outside the home for seven and one-half years. She also contributed her homemaking skills to the marriage and periodically cared for Donald's daughter from a previous marriage.

Donald brought some assets into the marriage, but the trial court found that both parties contributed to the accumulation of the marital property. The marital assets were valued at $112,605.67, consisting of cash, personal property, shareholder interests, profit sharing accounts, the marital home, and some other miscellaneous property. The trial judge ordered Donald to pay Joan $50,000 as her interest in the marital property. $25,000 would be paid immediately from the profit sharing plan, with the balance payable in installments of $500 per month plus interest at the prime rate until paid in full. Joan was also awarded the furniture and those items in her possession, except for some personal property of Donald's. Donald was awarded the remaining marital property, along with liability for all the marital debts.

The trial court granted each party a divorce on mental cruelty grounds, but because the trial court found Donald's fault to be slightly greater, Joan was awarded alimony in the amount of $600 per month for one year, decreased to $400 per month for nine years, or until Joan died, remarried or cohabited with a man. Donald was also ordered to pay $1,600 of Joan's attorney fees.

On appeal, Donald argues that the trial court improperly computed the value of the marital assets, divided the property inequitably, and erred in awarding alimony and attorney fees to Joan. We will treat each of these issues separately as follows:

## I. MARITAL ASSETS WERE PROPERLY VALUED.

■ Donald argues that the trial judge was clearly erroneous in valuing the Baltzers' property, particularly the marital home. We disagree. "Exactitude is not required of the trial court in the valuation of assets in a dissolution proceeding; it is only necessary that the value arrived at lies within a reasonable range of figures." *Goehry v. Goehry,* 354 N.W.2d 192, 196 (S.D.1984); *Krage v. Krage,* 329 N.W.2d 878 (S.D.1983); *Hanks v. Hanks,* 296 N.W. 2d 523, 526 (S.D.1980).

In valuing the assets for purposes of making a property division, the trial court is not required to accept either party's proposed valuation. *Hanks, supra.* The only time this court will interfere with the valuations as determined by the trial court is when the trial court has made a clearly erroneous valuation finding. *Herrboldt v. Herrboldt,* 303 N.W.2d 571 (S.D.1981). Absent a stipulation as to the values of assets, the parties "had better be prepared to produce hard evidence as to those values other than their own personal opinions." *Hanks, supra* at 526.

There was no appraisal of the condominium submitted, thus the trial court was not clearly erroneous in using the purchase price of the property two years ago. Although Donald testified that the condominium had decreased in value, his personal opinion must be weighed with circumspection. The court did not err in rejecting Donald's value absent any appraisal by a disinterested party. Donald does not point out errors as to any of the other marital property. We hold that the values assigned to the property by the trial court are within a plausible range and should not be modified or set aside by this court on review.

## II. MARITAL ASSETS AND LIABILITIES WERE EQUITABLY DISTRIBUTED.

■ SDCL 25-4-44 provides:
Where a divorce is granted for an offense of either husband or wife, the courts shall in such action have full pow-

er to make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property the court shall have regard for equity and the circumstances of the parties.

This court has held that the trial court has broad discretion with respect to property division, and its judgment will not be set aside unless it clearly appears that the trial court abused its discretion. *Cole v. Cole*, 384 N.W.2d 312 (S.D.1986); *Temple v. Temple*, 365 N.W.2d 561 (S.D.1985). On review we are limited to a determination of whether there was an equitable property division. Factors to be considered in dividing marital property include: duration of the marriage; value of the property; ages of the parties; their health and competency to earn a living; the individual contributions of the parties to the accumulation of the property; and the income producing capacity of the parties' individual assets. *Garnos v. Garnos*, 376 N.W.2d 571 (S.D. 1985); *Wallahan v. Wallahan*, 284 N.W.2d 21 (S.D.1979). Fault should not be considered. SDCL 25-4-45.1. While these factors are considered, there exists no mathematical formula in making a property division. *Martin v. Martin*, 358 N.W.2d 793 (S.D.1984).

■ The trial court found that the marriage lasted 10 years and valued the marital property at $112,605.67. The parties were ages 48 and 43 at the time of trial. Donald has excellent health, while Joan has some minor health problems. Donald earns $35,000 a year plus benefits, while Joan can expect to earn approximately $10,-000. She did work outside the home for seven and one-half years, contributing to the marital assets. Her contribution as a wife and stepmother also added to the accumulation of assets. *Temple, supra.*

Joan was awarded almost half of the marital assets and such assets are liquid. Donald's share of the property has little income producing capacity because it is not liquid, not readily saleable, or has been locked into some investment plan. The record supports the trial court's considera-tion of the foregoing factors, and we hold that the trial court did not abuse its discretion in dividing the marital assets and liabilities.

## III. ALIMONY AWARD BEYOND ONE YEAR WAS AN ABUSE OF DISCRETION.

The trial court awarded Joan $600 per month alimony for one year, and thereafter $400 per month for an additional nine years, or until her death, remarriage, or cohabitation with a man, whichever occurs first. We hold that the trial court properly awarded $600 per month alimony for one year, but the $400 per month award for the remaining period of nine years, or until her death, remarriage, or cohabitation with a man was an abuse of discretion.

■ SDCL 25-4-41 allows the trial court to compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period as the court may deem just, having regard to the circumstances of the parties represented. The Supreme Court shall not disturb an award of alimony unless it clearly appears that the trial court abused its discretion. *Goehry, supra; Krage, supra.* The factors to be considered by the trial court in awarding alimony include the length of marriage, earning capacity of the parties, financial condition after the property division, age, health and physical condition of the parties, parties' station in life or social standing, and fault. *Hanks, supra.*

■ In order to determine whether the trial court has abused its discretion, this court reviews the award of alimony and property division together. *Booth v. Booth*, 354 N.W.2d 924 (S.D.1984). Reviewing the property division and alimony together, Joan could be earning interest on the $25,000 cash settlement of approximately $200 per month; receive $500 per month installments, plus interest, owing on the property settlement; receive $600 per month alimony for one year; and then receive $400 per month until 1996. Joan would also earn income from any employment she obtains. Without such employ-

ment, Joan would have an income of approximately $1,300 a month for year one; $1,100 per month for the next four years until the property settlement is paid in full; and $600 per month over the remaining five years. We are aware that Joan has incurred personal debts and attorney fees since the onset of this action that she is obligated to pay. Conversely, Donald has a monthly take-home pay of $2,000, and he must first pay $200 a month child support from a previous marriage for three years. He must also pay the $600 alimony award to Joan for one year, then $400 for nine more years. This is in addition to the $500 per month plus interest he is required to pay Joan pursuant to the property division. This leaves Donald with approximately $700 per month disposable income for year one, with $900 monthly the next two years, and $1,100 monthly until the property settlement is discharged. These amounts do not take into account Donald's higher cost of living because of his employment obligation or his assumption of all the marital debts. Considering the equity and circumstances of the situation, the $600 award of rehabilitative alimony for one year was reasonable and not an abuse of discretion. This will allow Joan the financial means to support herself until she obtains employment or becomes further educated to obtain more desirable employment. Comparing the respective financial situations after the property division and alimony award, the trial court abused its discretion in awarding Joan the additional $400 per month for nine years. While alimony will not be denied because a wife may be able to obtain employment to support herself, neither will it be awarded to allow a wife capable of employment to sit in idleness. *Wallahan, supra; Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977). Joan is a woman capable of many years of employment, and to award such a large amount of alimony would not rehabilitate her, but result in a windfall to her. Donald should not be required to support Joan in such a manner when he is working full time to meet his obligations while Joan would not be required to work at all. Such an award of alimony would not be rehabilitative.

Appellee argues that because Donald's relative fault was greater than Joan's, the alimony award is justified. We disagree. The facts reveal that both parties contributed to the failure of the marriage, and each was granted a decree of divorce from the other on the grounds of extreme cruelty.

For purposes of determining the amount and length of alimony payments, the trial court found that "because of the plaintiff's relationship with another woman, relative fault in the termination of the marriage is greater." Let us examine this finding in light of the record which discloses, in part, the following:

1. This action was commenced with service of a summons and complaint on Joan on January 10, 1986.

2. Donald's admitted involvement with another woman did not occur until about the middle of April 1986, after the final separation from Joan.

3. During the course of the marriage, Joan had evicted or locked Donald from the home about 40 times.

4. Joan admitted to a serious problem with alcohol. She also stressed Donald's drinking problems but stated it did not affect his job performance.

5. On numerous occurrences Joan assaulted Donald by physically beating him with various objects such as framed pictures, fry pan, spiked heel, and fists. There were constant arguments about money, vacations, drinking, and hours worked by Donald.

6. Joan initially testified that Donald's relationship with another woman was not the problem, and she would have been willing to reconcile after the divorce action was started. She subsequently testified that she meant to say that the relationship did interfere with an attempt to reconcile.

7. Joan tore up an income tax return on the evening of the filing deadline.

The record readily supports the conclusion that this marriage was already in its terminal stage before the other woman entered the scene. The extent of Joan's inap-

propriate behavior negates the trial court's conclusion that Donald's fault is greater than Joan's. We find it to be clearly erroneous. We reverse the award of alimony which exceeds the amount of $600 per month for one year.

## VIII. PARTIAL ATTORNEY FEES WERE PROPERLY AWARDED.

The trial court awarded Joan $1,600 in attorney fees. SDCL 15–17–7 allows the court, in its discretion, to award attorney fees in divorce cases. On review, this court will examine the trial court's analysis of the following elements in fixing fees: the amount and value of the property involved, intricacy and importance of the litigation, labor and time involved, skill required to draft pleadings and try the case, discovery procedures utilized, existence of complicated legal problems, time required, whether briefs were required, and whether an appeal was involved. *Cole, supra; Temple, supra.* The trial court found that the itemized statement of the wife's attorney was reasonable, having adequately considered the *Cole* factors and Donald's initial reluctance to comply with discovery, resulting in further costs. We hold that the trial court did not abuse its discretion by awarding such attorney fees and affirm the same.

Joan also moves for additional attorney fees for the defense of this appeal, which motion is supported by an affidavit and itemized statement. *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985). The amount of the statement, after deducting anticipated costs of oral argument, which was waived, is $1,764.45. Where the judgment is affirmed in part and reversed in part, the costs of appeal are within the discretion of the Supreme Court. SDCL 15–30–7. After applying the applicable guidelines, we approve the amount of $500 for Joan's appellate attorney fees.

The case is remanded to the circuit court for amendment of the judgment and decree consistent with this decision.

WUEST, C.J., concurs.

HENDERSON, J., concurs specially.

MORGAN and MILLER, JJ., concur in part and dissent in part.

BERNDT, Circuit Judge, sitting for SABERS, J., disqualified.

HENDERSON, Justice (concurring specially).

## ALIMONY

For posterity, the alimony cases in this Court for nearly a decade have been collected by this special writer and are noted below including any special writings pertaining thereto.

### MAJORITY OPINIONS WRITTEN BY THIS AUTHOR

(1) *Caughron v. Caughron,* 418 N.W. 2d 791 (S.D.1988).

(2) *Tesch v. Tesch,* 399 N.W.2d 880 (S.D. 1987).

(3) *Straub v. Straub,* 381 N.W.2d 260 (S.D.1986).

(4) *Wehrkamp v. Wehrkamp,* 357 N.W. 2d 264 (S.D.1984).

(5) *Goehry v. Goehry,* 354 N.W.2d 192 (S.D.1984).

(6) *Plucker v. Plucker,* 338 N.W.2d 842 (S.D.1983).

(7) *Myhre v. Myhre,* 296 N.W.2d 905 (S.D.1980).

### CONCURRENCES JOINING MAJORITY OPINIONS

(1) *Stemper v. Stemper,* 415 N.W.2d 159 (S.D.1987).

(2) *Stemper v. Stemper,* 403 N.W.2d 405 (S.D.1987).

(3) *Thomerson v. Thomerson,* 387 N.W. 2d 509 (S.D.1986).

(4) *Garnos v. Garnos,* 376 N.W.2d 571 (S.D.1985).

(5) *Lambertz v. Lambertz,* 375 N.W.2d 645 (S.D.1985).

(6) *Pennock v. Pennock,* 356 N.W.2d 913 (S.D.1984).

(7) *Moller v. Moller,* 356 N.W.2d 909 (S.D.1984).

(8) *Booth v. Booth*, 354 N.W.2d 924 (S.D.1984).

(9) *Oesterling v. Oesterling*, 354 N.W.2d 735 (S.D.1984).

(10) *Rousseau v. Gesinger*, 330 N.W.2d 522 (S.D.1983).

(11) *Krage v. Krage*, 329 N.W.2d 878 (S.D.1983).

(12) *Morrison v. Morrison*, 323 N.W.2d 877 (S.D.1982).

(13) *Rykhus v. Rykhus*, 319 N.W.2d 167 (S.D.1982).

(14) *Gassman v. Gassman*, 296 N.W.2d 518 (S.D.1980).

(15) *Talbert v. Talbert*, 290 N.W.2d 862 (S.D.1980).

(16) *Price v. Price*, 278 N.W.2d 455 (S.D.1979).

(17) *Braaten v. Braaten*, 278 N.W.2d 448 (S.D.1979).

## SPECIAL CONCURRENCES/CONCURRENCES IN RESULT BY THIS AUTHOR

(1) *Arens v. Arens*, 400 N.W.2d 900, 902 (S.D.1987) (Henderson, J., concurring specially).

(2) *Marquardt v. Marquardt by Rempfer*, 396 N.W.2d 753, 755 (S.D.1986) (Henderson, J., concurring specially).

(3) *Tate v. Tate*, 394 N.W.2d 309, 311 (S.D.1986) (Henderson, J., concurring specially).

(4) *Wegner v. Wegner*, 391 N.W.2d 690, 695 (S.D.1986) (Henderson, J., concurring in result in part, concurring in part).

(5) *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 263 (S.D.1984) (Henderson, J., concurring specially).

(6) *Moore v. Moore*, 354 N.W.2d 732, 733 (S.D.1984) (Henderson, J., concurring specially).

## DISSENTS AND CONCURRING IN PART/DISSENTING IN PART TO MAJORITY OPINIONS BY THIS AUTHOR

(1) *Lodde v. Lodde*, 420 N.W.2d 20, 22 (S.D.1988) (Henderson, J., dissenting).

(2) *Hautala v. Hautala*, 417 N.W.2d 879, 883 (S.D.1988) (Henderson, J., concurring in part, dissenting in part).

(3) *Wilson v. Wilson*, 399 N.W.2d 890, 892 (S.D.1987) (Henderson, J., dissenting).

(4) *Kelley v. Kirk*, 391 N.W.2d 652, 660 (S.D.1986) (Henderson, J., concurring in part, dissenting in part).

(5) *Lampert v. Lampert*, 388 N.W.2d 899, 904 (S.D.1986) (Henderson, J., dissenting).

(6) *Cole v. Cole*, 384 N.W.2d 312, 318 (S.D.1986) (Henderson, J., concurring in part, dissenting in part).

(7) *Stubbe v. Stubbe*, 376 N.W.2d 807, 809 (S.D.1985) (Henderson, J., dissenting).

(8) *Temple v. Temple*, 365 N.W.2d 561, 569 (S.D.1985) (Henderson, J., dissenting).

(9) *Connelly v. Connelly*, 362 N.W.2d 91, 92 (S.D.1985) (Henderson, J., dissenting).

(10) *Martin v. Martin*, 358 N.W.2d 793, 800 (S.D.1984) (Henderson, J., concurring in part, dissenting in part).

(11) *Hanks v. Hanks*, 334 N.W.2d 856, 859 (S.D.1983) (Henderson, J., concurring in part, dissenting in part).

(12) *Watt v. Watt*, 312 N.W.2d 707, 712 (S.D.1981) (Henderson, J., concurring in part, dissenting in part).

(13) *Herndon v. Herndon*, 305 N.W.2d 917, 919 (S.D.1981) (Henderson, J., concurring in part, dissenting in part).

(14) *Meinders v. Meinders*, 305 N.W.2d 404, 407 (S.D.1981) (Henderson, J., dissenting).

(15) *Herrboldt v. Herrboldt*, 303 N.W.2d 571, 573 (S.D.1981) (Henderson, J., dissenting).

(16) *Lanphear v. Lanphear*, 303 N.W.2d 576, 578 (S.D.1981) (Henderson, J., concurring in part, dissenting in part).

(17) *Balvin v. Balvin*, 301 N.W.2d 678, 681 (S.D.1981) (Henderson, J., concurring

in part, concurring specially in part, dissenting in part).

(18) *Currier v. Currier*, 296 N.W.2d 713, 715 (S.D.1980) (Henderson, J., dissenting).

This author disqualified in *Lien v. Lien*, 420 N.W.2d 26 (S.D.1988), and *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979).

History, and hopefully students of the Law, will judge my attempts to distinguish the merit of alimony awards in the above bibliography of cases. These cases represent hundreds of hours of reading records, perusing briefs, researching the evolution of alimony since its birth in England, attempting to glean/distinguish the types of alimony this Court has awarded, and always, in the end, believing that the merits of each award of alimony should stand or fall depending upon the facts of the case. Alimony has not ebbed in South Dakota, notwithstanding the "liberation of women" and their increased role in the marketplace of employment. This has been the subject of comment by this special writer before. Contrary to the social and economic changes wrought by the great divorce revolution, and the resulting demand for more jobs in the marketplace, alimony has grown by leaps and bounds in South Dakota. With a state known throughout the High Plains, via statistics gathered by the United States Department of Commerce and Bureau of Business Research at the University of South Dakota, as one of the most economically poor states in the Union, with attending low pay checks, and a sparse population, this is a domestic paradox of giant proportion. Furthermore, the growth of alimony awards in South Dakota does not parallel the spirit/holdings of most jurisdictions in this Nation. During the course of my writings, there have been many changes of personnel on this Court. Changes in law often spring from changes on the Bench. One, given to writing and attempting to spin good cloth in the domestic relations loom, considers past writings of himself as well as the Court's holdings with deep reflection.

With that background in mind, I join the opinion, written by a well-respected, seasoned trial judge of this state. I join it because it basically makes good sense. Marital assets herein were properly valued by the trial court and exactitude was not required by the trial court, in these valuations, which I note is language used by this special writer in writing *Goehry*, cited by the majority writer. Concerning the equitable distribution of the marital assets, the ex-wife was awarded approximately one-half of the assets, notwithstanding that the ex-husband was, throughout the marriage, an architect who earned the vast majority of income in this marriage. Surely, the trial judge, Judge Hurd, did not, from a standpoint of equity, mistreat the ex-wife.

This takes me to a very short dissertation on the alimony aspect in this case.* Perhaps the bibliography of cases is triggered by the dissent in part of Justice Miller, who joined this Court in December 1986. Throughout my long and almost tortured labors, now almost ten years, to distinguish the rightness or wrongness of alimony, as well as the different types of alimony, I have likewise believed, as does Justice Miller, that there might well be confusion among the trial bench and bar as to the distinctions in alimony. And I say that I have, to the best of my ability, attempted to not only decide each case on the particular merits, but also to specify the variations of alimony and to apply the facts to the basic principles of the type of alimony attempted to be awarded by the trial court. This author has, in numerous writings, defined rehabilitative alimony. It is suggested that a certitude in definition prevailed therein. *See Tesch v. Tesch*, 399 N.W.2d 880, 885 (S.D.1987). *See also Hautala v. Hautala*, 417 N.W.2d 879, 884–85 (S.D.1988) (Henderson, J., dissenting); *Stubbe v. Stubbe*, 376 N.W.2d 807, 810 (S.D.1985) (Henderson, J., dissenting); *Martin v. Martin*, 358 N.W.2d 793, 801–02 (S.D.1984) (Henderson, J., concurring in part, dissenting in part); *Saint–Pierre v.*

---

* The history of alimony and philosophical basis for it is set out in *Connelly v. Connelly*, 362 N.W.2d 91, 92–93 (S.D.1985) (Henderson, J., dissenting).

*Saint–Pierre,* 357 N.W.2d 250, 263 (S.D. 1984) (Henderson, J., concurring specially). It is regrettable if confusion persists notwithstanding these efforts. Properly applying facts of the case to the concept of rehabilitative alimony should be less elusive than finding a pearl in an oyster.

Laboring in the legal vineyard, lo these many years, I have attempted to distinguish rehabilitative alimony from other types of awards; examples:

A. Temporary Alimony. *Arens v. Arens,* 400 N.W.2d 900, 902–03 (S.D. 1987) (Henderson, J., specially concurring).

B. Reimbursement Alimony. *Martin,* 358 N.W.2d at 803 (Henderson, J., concurring in part, dissenting in part).

C. Permanent Support. *Hautala,* 417 N.W.2d at 885 (Henderson, J., dissenting).

D. Restitutional Alimony. *Saint–Pierre,* 357 N.W.2d 263 (Henderson, J., concurring specially).

E. Property Awards, Separate Maintenance Awards. *Hautala,* 417 N.W. 2d at 885–86; *Saint-Pierre, id.*

F. Child Support. *Meinders v. Meinders,* 305 N.W.2d 404, 407–08 (S.D. 1981) (Henderson, J., dissenting).

Conceptually, then, rehabilitative alimony is distinct. It is, however, awarded after consideration of several factors as found in other alimony awards set out in *Caughron v. Caughron,* 418 N.W.2d 791, 793 (S.D. 1988); *Tesch,* 399 N.W.2d at 884; *Straub v. Straub,* 381 N.W.2d 260, 261 (S.D.1986); *Goehry v. Goehry,* 354 N.W.2d 192, 194 (S.D.1984). However, it cannot be of long duration nor excessive in amount. *See Tesch,* 399 N.W.2d at 885 (unanimous opinion).

In this case, the majority writer, with whom I fully concur, reasons that the additional $400 per month award for nine years is not rehabilitative. This is totally commensurate with my past writings, and most particularly pertinent to my dissent recent-

ly filed in *Hautala.* There, I did not believe that it was conceptually sound to approve a ten-year rehabilitative alimony award, and here it is likewise wrong to have a $400 per month, nine-year rehabilitative alimony award. *See* my reasoned elaboration in *Hautala,* together with authorities therein mentioned. Justice Miller now quotes the *Saint–Pierre* case in his special writing and I submit that in my dissent in *Hautala,* I compacted the correct holding therein as written by our ex-Chief Justice, Roger Wollman. The ink is barely dry in *Hautala,* and I ask the students of domestic relations law to review my concurrence in part, dissent in part, and my distinguishing of former cases in this Court, and then apply those distinctions to the holding of the majority opinion in the instant appeal.

This Court has the facts before it, as did the trial court. We need not remand this case to the trial court for a further adjudication based upon hypothetical fears. The trial court's decision is sound and it should be affirmed. This Court can examine its decisions and the decisions of other jurisdictions to arrive at proper concepts of law for the benefit of the practicing lawyers and the trial bench of this state. In the end, we determine if the trial judge abused his discretion in awarding alimony of $400 per month for nine years, be it an award of "alimony" or "rehabilitative" alimony; the standard of review is abuse of discretion; the abuse of discretion exists not herein.

MILLER, Justice (concurring in part and dissenting in part).

I concur with that part of the majority opinion which affirms the valuation and distribution of the marital assets. However, I would remand the entire alimony question for reconsideration by the trial court. Therefore, I dissent from that part of the majority opinion which affirms what it characterizes as "rehabilitative alimony."

As noted by the majority, the trial court awarded *alimony* [1] of $600 per month for

1. Although not raised on appeal, it is interesting to note that appellee never requested alimony in

her pleadings. She merely requested an equitable property division, attorney fees, and the

one year, followed by $400 per month *alimony* payments for nine years, contingent upon the condition that she not die, remarry, or cohabitate with a man. Nowhere in its memorandum decision, findings of fact, conclusions of law, or decree of divorce did the trial court in any manner indicate or specify that it was awarding *rehabilitative* alimony.[2]

It appears to me that there is some confusion among the trial bench and bar as to the distinctions between alimony, rehabilitative alimony, and reimbursement alimony. My review of the cases dealing with rehabilitative and reimbursement alimony convinces me that our prior holdings, although abundantly clear as they apply to the facts presented therein, may not be completely or accurately comprehended. *Tesch v. Tesch,* 399 N.W.2d 880 (S.D.1987); *Martin v. Martin,* 358 N.W.2d 793 (S.D. 1984); *Wehrkamp v. Wehrkamp,* 357 N.W. 2d 264 (S.D.1984); *Saint–Pierre v. Saint–Pierre,* 357 N.W.2d 250 (S.D.1984); *Booth v. Booth,* 354 N.W.2d 924 (S.D.1984). For that reason, I take the liberty of setting forth a brief summary of definitions and distinctions.

## ALIMONY

Generally stated, alimony is an allowance for support and maintenance, having as "... its sole object the provision of food, clothing, habitation, and other necessaries for the support of a spouse." 24 Am.Jur. 2d *Divorce and Separation* § 520 (1983). One need only examine the numerous annotations to our prior holdings under the statute (SDCL 25-4-41) to see that we have given clear, definitive guidance to the bench and bar as to the appropriate factors to apply in considering alimony requests.

## REHABILITATIVE ALIMONY

The specific use of the term "rehabilitative alimony" is relatively new to this

standard boiler plate language requesting "such other and further relief as the court shall deem just and proper."

2. However, at the conclusion of the trial, immediately prior to adjournment, the trial court made the following statement:

court. *Wehrkamp, supra; Saint–Pierre, supra; Booth, supra.*

Although we have not specifically defined the term, it seems clear that its application has followed the general definition found at 24 Am.Jur.2d *Divorce and Separation* § 746 (1983), as being an award

... for a short, specific and determinable period of time, which payment will cease when the recipient is, in the exercise of reasonable efforts, in a position of self support.

Rehabilitative alimony is "... designed to place the dependent spouse in an income-generating position, which would free the obligor spouse from further obligation as well as relieve society from a need to support such party." 24 Am.Jur.2d *Divorce and Separation* § 521 (1983).

In *Saint–Pierre,* 357 N.W.2d at 261, we indicated that rehabilitative alimony is appropriately granted when

... the contributing supporting spouse requires a lump sum or a short term award to achieve economic self sufficiency or to improve or refresh his or her job skills.

## REIMBURSEMENT ALIMONY

Reimbursement alimony seems to be a hybrid of rehabilitative alimony. In *Saint–Pierre,* 357 N.W.2d at 262, we said:

... in a proper case the trial court should award alimony as reimbursement to the supporting spouse for his or her contribution to the non-working spouse's obtaining of an advanced training....

## FACTORS TO BE CONSIDERED

The majority has articulated the well-settled factors which trial courts should consider in awarding alimony. I will not reiterate them here.

"Only issue is going to be alimony. You might not like what I'm going to do. It's not going to be very hard for me to put values on things to do that. I can do that in my sleep. The only issue is rehabilitative alimony."

However, the majority overlooks that additional factors must be considered in awarding rehabilitative or reimbursement alimony. In *Saint–Pierre*, 357 N.W.2d at 262, we specifically held:

> ... the trial court should consider all relevant factors, including the amount of the supporting spouse's contributions, his or her foregone opportunity to enhance or improve professional or vocational skills, and the duration of the marriage following completion of a non-supporting spouse's professional education.

In the present case, I am convinced that the alimony awarded by the trial court needs to be totally reconsidered and then be supported by appropriate findings, for the following reasons:

(1) If the trial court intended to require typical alimony, it erred because the award was excessive in amount and duration, for all the reasons stated in the majority opinion.

(2) If, however, the trial court intended to award either rehabilitative or reimbursement alimony, it erred in (a) failing to designate it as such, *and* (b) failing to make the appropriate findings to support the award, e.g. need to achieve self sufficiency, need to improve or refresh job skills, the amount of the supporting spouse's contributions, her foregone opportunity to enhance or improve professional or vocational skills, the duration of the marriage following completion of the non-supporting spouse's professional education, etc.

Both parties to this action deserve a reconsideration of the award under the appropriate guidelines.

I am authorized to state that Justice MORGAN joins in this concurrence in part and dissent in part.