Steven L. JOHNSON, Plaintiff
and Appellee,

v.

Susan J. JOHNSON, Defendant
and Appellant.

No. 17282.

Supreme Court of South Dakota.

Considered on Briefs March 20, 1991.

Decided May 29, 1991.

Kay F. Nikolas, Sisseton, for plaintiff and appellee.

Roger W. Ellyson, Ellyson Law Offices, Watertown, for defendant and appellant.

AMUNDSON, Justice.

Susan J. Johnson appeals the judgment and decree of divorce entered August 30, 1990. We affirm in part, reverse in part, and remand.

## FACTS

Susan J. Johnson (wife) and Steven L. Johnson (husband) were married July 11, 1981. Their first child was born in 1981, and their second in 1985. Wife did not work outside the home during the marriage; she stayed home to raise the children and maintain the family home. Prior to marriage, she obtained a high school diploma and attended one year of vocational school. Husband obtained a college degree in mortuary science and was a licensed funeral director for five years before the parties' marriage. Throughout the marriage, husband continued to work in the family funeral home and furniture business where he had worked since high school.

At the time of the marriage, husband owned a twenty-five percent (25%) interest in the family funeral home and furniture business. During the marriage he purchased an additional fifty-seven percent (57%) interest, thus, at the time of trial he owned an eighty-two percent (82%) interest in the corporation. Husband's father later became incapacitated, and husband has been running both the funeral home and furniture store since 1985. When the parties were married, husband also owned a house in which they lived during the marriage, a car, and various furnishings and personal property, which assets were contributed to the marital estate. Wife contributed a car and some personal property to the marital estate, on which the court placed no value.

The breakdown of the marriage resulted from the inability of the parties to cope with medical problems and normal business stresses, resulting in chemical abuse and violence by both husband and wife. Husband is a manic depressive, however, his illness is controlled with medication and psychiatric counseling. Wife suffers from borderline personality disorder, a genetic disorder which causes violent and abrupt mood swings, resulting in a great deal of stress on the sufferer and family. There is no cure for this disorder, but wife is involved in counseling. Since her teenage years, this disorder has led her to alcohol abuse and bulimia in attempts to cope. The court found that husband was aware of wife's bulimia prior to their marriage. Wife's bulimia and addiction to alcohol became more severe after the birth of the second child in 1985. Husband began using cocaine due to stresses at home and at the business, and this led to both parties becoming regular users. The care of the children and the home suffered accordingly.

Early in 1989, at the urging of the family minister, husband had wife hospitalized for treatment of her alcohol abuse and eating disorder. This was the beginning of a series of hospitalizations and treatments in numerous institutions which uniformly ended in failure due to wife's continued bulimia and use of alcohol, and due to husband's facilitation of her continued use of cocaine. Her conduct caused husband and the children to leave the family's home at one point, and resulted in prosecution of wife for several episodes of criminal behavior. Both husband and wife have physically assaulted each other on occasion.

Husband commenced this action for divorce in January 1990. Prior to trial, husband and wife stipulated that they had irreconcilable differences. After trial, the court awarded wife $75,000 and her car, and awarded the balance of the property to husband. Wife was also awarded rehabilitative alimony of $4,000 per year for four years. The children were placed in husband's custody, and no child support was ordered. Wife was allowed eight hours of supervised visitation twice a month, plus visitation on an alternating basis for birthdays and holidays. Wife was also awarded attorney fees. Additional details are discussed below in the analysis of each issue raised by wife's appeal.

## ISSUES

1. Does the trial court's division of property constitute an abuse of discretion?

2. Is the trial court's valuation of Johnson Furniture and Funeral Home, Inc. clearly erroneous?

3. Does the trial court's award of rehabilitative alimony evidence an abuse of discretion?

4. Does the restricted visitation ordered by the trial court constitute an abuse of discretion?

5. Does the trial court's award of only a portion of wife's attorney fees demonstrate an abuse of discretion?

## ANALYSIS

### 1. Property Division.

■ Wife argues that the division of the marital assets is inequitable because husband was awarded nearly all of what was a substantial marital estate. Husband responds that the award properly restored to him the value of pre-marital assets, and that wife made no direct contribution to the marital property. It is well settled that this court will not disturb a division of property unless it clearly appears that the trial court abused its discretion. *Fox v. Fox*, 467 N.W.2d 762, 766 (S.D.1991); *Studt v. Studt*, 443 N.W.2d 639, 642 (S.D.1989). *See Estate of Donahue*, 464 N.W.2d 393, 395 (S.D.1990) (defining abuse of discretion standard). This clear abuse of discretion standard likewise governs our review of awards of alimony, visitation, and attorney fees. *Fox*, 467 N.W.2d at 766; *Shoop v. Shoop*, 460 N.W.2d 721, 725, 726 (S.D.1990). The exercise of the trial court's discretion in dividing the property of divorcing parties is, however, limited by SDCL 25–4–44[1] and SDCL 25–4–45.1.[2] *Fox*, 467 N.W.2d at 766.

■ In *Ryken v. Ryken*, 461 N.W.2d 122, 126 (S.D.1990) (*Ryken II*), we reiterated that the principal factors to be considered in making a property division are: "(1) the duration of the marriage; (2) the value of the property; (3) the ages of the parties; (4) their competence to earn a living; (5) the contribution of each party to accumulation of property; and (6) the income-producing capacity of the parties' as-

---

**1.** SDCL 25–4–44 provides:
When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property, the court shall have regard for equity and the circumstances of the parties.

**2.** SDCL 25–4–45.1 provides, in pertinent part:
Fault shall not be taken into account with regard to the awarding of property ... except as it may be relevant to the acquisition of property during the marriage[.]

sets." In considering these factors, the trial court is to be guided by principles of equity. *Ryken v. Ryken*, 440 N.W.2d 300, 304 (S.D.1989) (*Ryken I*); *Cooper v. Cooper*, 299 N.W.2d 798, 799–800 (S.D.1980) (Henderson, J., dissenting). The record in this case demonstrates that the trial court's division of property specifically took into consideration most of the relevant factors noted above, and it is unnecessary to reiterate each of the trial court's findings here. However, the record does not reflect an appropriate consideration of wife's contribution to the accumulation of property during the marriage. We have consistently held that the duties performed as a mother and housewife constitute a valuable contribution to the marital property. *See, e.g., Garnos v. Garnos*, 376 N.W.2d 571, 573 (S.D.1985). Although the trial court made reference to this consideration in passing, we find that consideration was more perfunctory than real.

Wife's primary point of contention in regard to the property division is that husband was improperly awarded a disproportionately large share of the marital estate. Her point is well taken. The trial court awarded wife $75,000 cash, payable in three equal annual installments without interest.[3] Husband was awarded the balance of the property valued at $420,803.02, and was responsible for debts of $7,862.65, a net award of $412,940.37.

We begin by noting that the trial court's division of property is not bound by any mathematical formula. *Baltzer v. Baltzer*, 422 N.W.2d 584 (S.D.1988). The trial court found that husband was the sole source of the marital assets and income, and that he would have been just as financially successful if he had not married. This is not one of the factors delineated by this court for consideration in making an equitable division of marital assets, nor will

this court adopt such a factor as appropriate in this case. Husband contends that the award was not disproportionate because approximately $20,000 represents the value of his premarital assets. The record on this matter is conflicting because, although the trial court found husband to have owned a house, car, and a variety of personal property prior to the marriage, these assets were included in the valuation of the marital estate. This matter must be resolved by the trial court on remand. Further, the $20,000 amount is but a fraction of a percent of husband's property award.

The division of property appears to have minimized, if not totally disregarded, the relative earning capacity of the parties. It was undisputed that husband's annual reported income is in excess of $90,000, and that he has unreported income which is siphoned from the business as he himself testified, and that wife's ability to support herself is uncertain and her current income is zero.[4] The trial court did find that in order for wife to hold a job she will need additional education and "extensive specialized counseling for a minimum of two years with an estimated cost of $500.00 to $800.00 per day in order for [wife] to be employable."[5] While husband was ordered to maintain the existing medical insurance for the next four years, wife is required to pay the deductible, and there was a serious question raised as to the coverage that would be provided by insurer.

The property division essentially forecloses any possibility that wife can become self-sufficient within the next four years, although it contemplates such a time period by the award of rehabilitative maintenance of $4,000 per year for a four-year period. This property division appears to have disregarded the circumstances of both parties and the principles of equity. Possibly the

---

**3.** All payments to wife were ordered to be paid to a trustee who will be responsible for managing her financial affairs. Wife does not oppose this requirement.

**4.** Even assuming wife obtains a job, no one suggests that her earning capacity will approach that of husband.

**5.** If wife were to receive such counseling five days a week for two years, the cost would range from approximately $260,000 to $416,000 for her necessary medical treatment. It is unlikely that husband's medical insurer would pay the majority of these expenses.

trial court felt that wife's trustee could manage her $25,000 per year for three years to provide wife with her basic living expenses for food, clothing, housing and medical care, but we cannot base our decision on assumptions, especially when they appear unreasonable on their face. Also, there is no indication why the trial court failed to award wife interest on the $75,000 award. *See Lien v. Lien,* 278 N.W.2d 436 (S.D.1979); *Balvin v. Balvin,* 301 N.W.2d 678 (S.D.1981).

Wife also argues that the value the trial court placed on the marital property of $495,803.02 is understated,[6] and that the award to her of only $75,000 cash over three years, without interest, will create a grave hardship for her in light of her medical needs. In particular, wife asserts that during the pendency of this action, husband dissipated marital assets by withdrawing $43,800 from the parties' Dean Witter account, and by converting income-producing assets into nonincome-producing by building a new $100,000 house.

The trial court's decision did not address husband's withdrawal of the funds from the Dean Witter account even though husband admitted withdrawing approximately $45,000 from the account without the consent or knowledge of wife or the court, and while the statutory restraining order was in effect. *See* SDCL 25-4-33.1. Husband first testified that some of the money was spent for expenses in building his new house, and then that the Dean Witter account was simply transferred to another fund within the stock portfolio. However, the trial court failed to resolve this disputed issue, and the valuation of the stock portfolio does not provide insight into the disposition of the Dean Witter account.

In addition, after this action was commenced, husband built a $100,000 house which wife alleges was paid for with marital investment funds. The trial court

found the value of the new house, the construction of which was started after the divorce proceedings had been commenced, to be $40,000.[7] Again, the findings of the trial court do not address the dispute over the source of the funds for construction of the home, or the fact that it was done without the consent of the court or wife. These issues were addressed in wife's proposed findings of fact and conclusions of law which were refused by the trial court. In *Pennock v. Pennock,* 356 N.W.2d 913, 915 (S.D.1984), we noted that the absence of findings on issues of alleged wrongful transfers of assets for the purpose of depleting the marital estate prior to trial requires that the matter be remanded to the trial court for further findings. If the trial court finds, based on the evidence presented at the original trial, that husband fraudulently dissipated marital assets, they should be included in the marital estate and charged against him. *Id.* After reviewing the total record, we come to the conclusion that the property division is against reason and the evidence, and must be remanded for an equitable division of the marital estate.

## 2. Valuation of Furniture and Funeral Home Business.

Wife asserts that the value of Johnson Furniture and Funeral Home, Inc. is $430,408.00 and that, accordingly, the value of husband's 82% interest is $352,600.00. The trial court valued the business at $337,661.00 and the marital value at $276,882.02.[8] The trial court adopted the valuation prepared by husband's certified appraiser because it took into account "the heavy competition faced by the funeral home and furniture store in the numerous neighboring towns and had several comparable sales upon which to base [the valuation]."

---

6. The valuation of the major asset, Johnson Furniture and Funeral Home, Inc., is addressed in issue two, *infra.*

7. It is unclear whether this figure represents the fair market value of the house or the equity in the house at the time of trial.

8. This figure includes the value of the 25% interest husband owned prior to the parties' marriage.

We will not overturn a valuation unless it is clearly erroneous. *Herrboldt v. Herrboldt*, 303 N.W.2d 571, 572 (S.D.1981). The court's assessment of the value of the funeral home and furniture business was within the range of figures presented at trial and supported by the record. *See Nelson v. Nelson*, 454 N.W.2d 533, 537 (S.D.1990). We do not require exactitude in the trial court's valuation of closely held businesses and, as long as its finding falls within a reasonable range of figures in evidence, we will not disturb the valuation. Such is the case here, and we affirm the trial court's determination of the total value of the furniture business and funeral home. As previously noted, however, the court's finding that the marital interest in the businesses was 82% conflicts with its finding that a 25% interest was held by husband before the marriage. On remand, the trial court is directed to resolve this factual conflict.

### 3. Alimony.

Wife also challenges the trial court's decision awarding her $4,000 per year rehabilitative alimony for four years, and awarding her no permanent alimony. The trial court's discretion in awarding alimony is bound by SDCL 25–4–41.[9] *Fox*, 467 N.W.2d at 766–67. Factors that must be considered in determining whether alimony is to be granted and, if granted, the amount and duration, include (1) the length of the marriage, (2) the parties' respective ages and health, (3) the earning capacity of each party, (4) the financial condition of each party after the property division, (5) the parties' station in life or social standing, and (6) the relative fault in the termination of the marriage. *Studt*, 443 N.W.2d at 643; *Bradeen v. Bradeen*, 430 N.W.2d 87, 88 (S.D.1988).

In *Fox*, we explained the distinction between permanent alimony and rehabilitative alimony. We stated:

Permanent alimony, as distinguished from restitutional and rehabilitative alimony, is an allowance for support and maintenance (i.e. the provision of food, clothing, habitation, and other necessaries) of the dependent/obligee spouse. It therefore follows that when a party requests permanent alimony they must establish that they have a need for support and that their spouse has sufficient means and abilities to provide for part or all of the need.

467 N.W.2d at 767. We review each case on its own facts and will not reverse unless the trial court abused its discretion. *Studt*, 443 N.W.2d at 643.

In its findings, the trial court specifically stated that it considered the relevant factors in making its alimony determination. The court found that the marriage was not particularly lengthy and that both parties were leaving the relationship at a young age. It also found that wife had supported herself prior to the marriage and that, given counseling and additional education, wife might eventually be self-sufficient. Based on our review of the court's findings, we are satisfied that permanent alimony was not mandated here.

On the issue of fault, the court found that "[b]ut for [wife's] alcohol abuse and eating disorder and her personality disorder, the parties would still be married." This finding is disturbing given the genetic and organic origin of wife's borderline personality disorder, and the fact that husband introduced wife to regular cocaine use, and encouraged and facilitated her habit even after she completed a treatment program. We note, however, that wife was in and out of ten treatment centers in one year for her chemical dependency and eating disorder, and that the treatment programs were unsuccessful because she failed to comply with treatment requirements. She completed only one of the many programs in which she participated. These facts lend

9. SDCL 25–4–41 provides:
   Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects.

support to the clear implication of the court's finding that wife was relatively more at fault for the termination of the marriage. While the relative financial condition of the parties does not approach a similar level and wife will suffer a decrease in her standard of living, these factors were taken into consideration by the court and we cannot say there is no basis in reason or evidence to support this decision. *See Estate of Donahue*, 464 N.W.2d at 395. This is particularly true in light of our remand of the property award for an equitable division.

The adequacy of the award of rehabilitative alimony must be judged based on the facts and circumstances of each individual case. *Studt*, 443 N.W.2d 639. Rehabilitative alimony is designed to permit a spouse the means necessary to enable him or her to refresh or enhance job skills necessary to become self-sufficient, and provide financial support while the party is obtaining necessary training. *Baltzer*, 422 N.W.2d 584; *Hautala v. Hautala*, 417 N.W.2d 879 (S.D.1988). In setting the amount and duration of rehabilitative alimony, the trial court should consider the party's foregone educational and employment opportunities during the marriage, the length of absence from the job market, the party's health, and the skills and time necessary to become self-sufficient. *Bradeen*, 430 N.W.2d 87; *Baltzer*, 422 N.W.2d 584; *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250 (S.D.1984).

Wife was awarded rehabilitative alimony of $4,000 per year for four years (which amounts to $333 per month), and husband was ordered to continue medical coverage for four years with wife paying the deductible. The award requires wife to obtain an education and provide for her own housing, food, clothing, and other necessaries on $333 per month. We cannot say that this award is so inadequate as to evidence an abuse of the trial court's discretion. However, the amount of rehabilitative alimony must be reconsidered in light of our holding remanding the property division for reconsideration.

*4. Visitation.*

Next, wife contends that the visitation is too restrictive, especially in light of the pretrial visitation schedule. Wife does not challenge the award of custody of both children to husband. In its conclusions of law, the trial court permitted wife the following visitation:

7.

That the Defendant be allowed supervised visitation with the children twice a month, with the supervisor to be a sober, responsible adult who will not permit the visits when the Defendant is drinking, and with the visits to be limited so as not to exceed eight (8) hours in duration.

8.

That Plaintiff and Defendant alternate holidays and birthdays of the children between them with the same conditions and restrictions as set forth above.

9.

That the Defendant further be allowed to call the children prior to 9:00 o'clock p.m. provided that she has not been drinking.

10.

That the Court specifically reserves the right to review the visitation and to grant more liberal visitation to Defendant when it is convinced that the children are in no danger and their best interests will be served by such change.

Wife does not object to the requirement that visitation be supervised; she challenges the ruling that the visitation be limited to 16 hours each month. Prior to trial, wife had the children every other weekend for the entire weekend.

While the present visitation schedule is more restrictive, the trial court made several findings regarding wife's condition and the problems involved in the exercise of her visitation rights prior to trial. The court found:

### XLVII.

As a result of her borderline personality disorder, Defendant is extremely manipulative, and, according to her psychologist, would lie, cheat and steal, exercises poor impulse control and judgment, and is a danger to herself and to others, including her children, during mood swings.

### XLVIII.

Defendant admitted to using alcohol when attempting to exercise visitation with the children during the pendency of this action in violation of the Court's order.

. . . . .

### L.

Defendant's conduct is unpredictable and potentially dangerous to the children such that a sober adult supervisor should be present when she is with the children.

. . . . .

### LII.

The best interests of the children will be served by allowing visitation with Defendant with supervision for a limited time duration on each visit, and allowing telephone contacts between the children and Defendant if the Defendant has not been drinking.

The trial court has a duty to protect the children, and its decision must necessarily be guided by the best interests of the children. *See Jasper v. Jasper,* 351 N.W.2d 114, 117 (S.D.1984); *Nauman v. Nauman,* 320 N.W.2d 519 (S.D.1982). *See also* SDCL 25-4-45; SDCL 30-27-19. The schedule set forth is within the bounds of the trial court's discretion, especially in light of wife's previous inability to control her behavior during visits and the potential danger she poses when she lacks control. As the trial court specifically noted, she is free to seek more liberal visitation rights when she no longer presents a danger to the children.

■ Before moving on to wife's final issue, we note that the trial court did not set child support to be paid by wife. Although both parties agree she has no income and it will be at least two years before she can hope to hold a job, there is no evidence the trial court considered the statutory presumption that a parent is capable of being employed at a minimum wage, and that the parent's support obligation shall be computed based on full-time employment at the minimum wage. SDCL 25-7-6.4. We point out that this presumption is rebuttable, but the trial court made no indication that it considered the requirements of SDCL 25-7-6.4 in ruling that "[wife] is not currently capable of providing child support to [husband], which has been recognized by [husband]." The consent of one party is insufficient to satisfy the statute, and this matter should be addressed on remand. It is settled law that the trial court retains continuing jurisdiction to set the appropriate level of child support. SDCL 25-7A-22; *Sharp v. Sharp,* 422 N.W.2d 443 (S.D.1988). Husband could, at any time until the children reach the age of majority, petition the court for an establishment of an appropriate level of support to be paid by the wife, and nothing in the decision of the trial court precludes that right.

### 5. Attorney Fees.

■ Wife contends that the trial court should have awarded her all of her attorney fees of $12,168.18, and asks us to award her appellate attorney fees. The trial court found the reasonable attorney fees incurred by mother to be $12,168.18, and awarded her $5,000 in attorney fees and $2,133.60 in costs, in addition to an interim award of $2,600 prior to trial. In total, wife was awarded $9,733.60 for attorney fees and costs.

The trial court's award of attorney fees is a matter that lies within its discretion, and its decision here does not evidence an abuse of that discretion. *Fox,* 467 N.W.2d at 768; SDCL 15-17-7. The court properly considered the necessary factors as set out in *Lien,* 278 N.W.2d at 436. The court found that the fee was reasonable and that both counsel did an outstanding job in what

was a complex divorce case. The trial court's award of attorney fees is affirmed.

■ Wife also submitted a motion for appellate attorney fees and costs, which is verified and supported by itemized statements of services rendered and costs incurred. *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985). Wife's total appellate fees and costs are $6,083.31. We are affirming the trial court in part and reversing in part. When a case on appeal is affirmed in part and reversed in part, appellate attorney fees and costs are in the discretion of this court. *Baltzer,* 422 N.W.2d 584. We award wife $2,000 in appellate attorney fees plus her costs on appeal.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

MILLER, C.J., and WUEST and HENDERSON, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

I agree that the property division is against reason and evidence and must be remanded for an equitable division of the marital estate. SDCL 25–4–44. The marital property is *theirs,* not *his,* and must be considered as such. The amount of their marital property to be distributed to wife should be sufficient to provide her some permanent financial security considering her illness and conditions and to enable her to contribute to the support of their children. *See Hilbrands v. Hilbrands,* 429 N.W.2d 750, 752–753 (S.D.1988).

Finally, in my view, the award of alimony was wholly inadequate in amount and duration, especially considering wife's medical situation, her need for medical insurance and the permanent disparity in the earning ability of the two parties. *Stubbe v. Stubbe,* 376 N.W.2d 807, 808 (S.D.1985).