**Hugh A. SOBOLIK, Plaintiff and Appellee,**

v.

**Priscilla Pearl STONE, Defendant and Appellant.**

**No. 15689.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1988.

Decided March 16, 1988.

Robert C. Riter, Jr., of Riter, Mayer, Hofer & Riter, Pierre, for plaintiff and appellee.

Linda Lea M. Viken of Finch, Viken, Viken & Pechota, Rapid City, for defendant and appellant.

MILLER, Justice.

This is an appeal from an order awarding "primary custody" of a minor child to an unwed father, subject to a child custody sharing arrangement which would give the minor child equal time with each parent. The trial court further ordered that neither parent would be required to pay child support; however, they were ordered to equally share all expenses, except for the health insurance coverage which was to be provided by the father. We affirm.

### FACTS

On February 25, 1986, Christy Rae Sobolik (Christy) was born to Priscilla Pearl Stone (Stone) and Hugh A. Sobolik (Sobolik). Stone and Sobolik are not now, nor have they ever been, married to each other. Sobolik acknowledged paternity and is named on the birth certificate as Christy's father. Sobolik has also publicly acknowledged Christy as his daughter, has accepted her into his family as a daughter, and has provided for her welfare. Subsequent to the time of Christy's birth, the parties shared equal time with Christy, alternating her physical custody nearly on a daily basis. The parties had also been equally sharing the expenses of raising her.

Stone is employed by the State of South Dakota and earns approximately $17,000 annually. Sobolik is employed as plant manager for Century Manufacturing Company in Pierre, South Dakota. There is no evidence in the record regarding his in-

come. (Stone claims in her appellate brief that Sobolik earns $32,000 annually.)

Prior to her relationship with Sobolik, Stone was married to Joseph Prue, Jr. (Prue) from which marriage two children (who are now approximately ages 12 and 14) were born. Stone and Prue were subsequently divorced and custody of the two children was awarded to Stone. Stone has been self-supporting, has received no child support from Prue, and has never been on ADC.

After her divorce, Stone returned to college, obtained a degree, and moved to Pierre where she has since resided and worked for Job Services. It was in Pierre that she met Sobolik and became engaged to him.

The relationship between the parties had deteriorated at the time Christy was born. Shortly after Christy's birth, Stone and her children moved in with Sobolik for approximately six weeks. Stone then decided that she needed to move out of the house and Sobolik agreed. At that time, the parties could not agree who should have the physical custody of Christy. The trial court found that Sobolik physically prevented Stone from taking Christy to live with her until she agreed to some joint custody arrangement. Eventually, the parties agreed that Christy would be physically exchanged between them daily. This unusual routine continued until the court ruled on Sobolik's action, which sought custody of Christy, subject to reasonable visitation rights in Stone. Stone had counterclaimed for custody and child support subject to reasonable visitation rights in Sobolik.[1]

Generally, it appears that the trial court found that (1) both parties were hardworking people, dedicated to their jobs and families; (2) both parents had demonstrated love and concern for Christy; (3) both had the financial ability to care for her; and (4) both parties were fit and proper persons to have custody. However, the court ultimately found that Sobolik had the character qualities and background which tended to make him a more stable influence in Christy's life, and that it was in the best

interests of Christy's temporal, mental and moral welfare that Sobolik have the "primary custody" of Christy. (The court defined "primary custody" to mean that he had the authority to make the final decisions regarding Christy's care when the parents were unable to agree.) The court also established a custody-sharing plan whereby Christy would spend equal time (approximately on a weekly basis) with each parent. No specific child support obligation was imposed; however, it was ordered that the parties were to equally share in the support and maintenance of Christy to the extent of their financial ability. Sobolik was also required to provide health insurance coverage for Christy, and both parties were to share medical expenses not covered by such insurance.

## ISSUE I

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PRIMARY CUSTODY OF CHILD TO FATHER, SUBJECT TO A CUSTODY SHARING ARRANGEMENT BETWEEN PARENTS.

Stone argues that the trial court abused its discretion in granting Sobolik primary custody of Christy, claiming there is evidence in the record which supports that Sobolik had used physical force and intimidation against Stone in the past. Stone claims that the weight of the evidence indicates that she is the more responsible party.

SDCL 30–27–19 provides in part:

In awarding the custody of a minor ... the court or judge is to be guided by the following considerations:

(1) By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; ...

(2) As between parents adversely claiming the custody ... neither parent shall be given preference over the other in determining custody.

1. Stone's appellate counsel was not her trial counsel.

In cases such as this, the trial court must give primary consideration to the child's best interests and welfare. *Pribbenow v. Van Sambeek*, 418 N.W.2d 626 (S.D.1988); *Garnos v. Garnos*, 376 N.W.2d 571 (S.D. 1985); *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980) *aff'd after remand* 344 N.W.2d 856 (S.D.1983); *Hoaas v. Hoaas*, 75 S.D. 55, 59 N.W.2d 254 (1953). In our review of the trial court's decision pertaining to child custody, we cannot substitute our judgment for that of the trial court unless there has been a clear abuse of discretion. *Prentice v. Prentice*, 322 N.W.2d 880 (S.D.1982); *Hanks, supra.*

Stone further argues that the best interests of Christy would be met if both parties were equally vested with parental authority. However, it should be noted that at the trial court level Stone solely requested primary custody (subject to a child custody sharing arrangement). She has never, until this appeal, requested joint legal custody with custody sharing.

A review of the record reveals that the trial court's factual findings and decisions were supported by the evidence and there was no abuse of discretion. During the years that Stone was involved with Sobolik, and for some years prior to that, she was experiencing uncertainty in her life. During a time frame of less than four years, Stone was engaged to three different men and all three engagements were subsequently broken. One of her former fiances was permitted to live in her basement apartment prior to, during, and after her engagement to Sobolik, and even while she was engaged to a second fiance. It appears that Stone's two children may have been left alone over night on occasion and that Sobolik assisted Stone with the discipline of the older child. There is no doubt that Stone cares for her children and does her best to properly provide for them; however, the trial court found that Sobolik had the character qualities and background which made him a more stable influence in Christy's life. Sobolik was securely employed and appeared to be a loving, concerned father. Testimony revealed he was religious and had a well-kept home.

Although we have serious reservations regarding the custodial arrangement (i.e. weekly exchange of child), especially when looking into the future, we cannot find that the trial court abused its discretion in deciding that "primary custody" in the father was in the best interests of Christy's temporal, mental, and moral welfare.[2] *Garnos, supra.* According to the court's judgment, final decisions are to be shared. It is only when the parties do not agree that Sobolik makes the final decision. Finally, custody is always reviewable by the court in the event appropriate circumstances warrant.

## ISSSUE II

### WHETHER THE TRIAL COURT'S DECISION TO DENY SPECIFIC CHILD SUPPORT PAYMENTS WAS ERRONEOUS.

Stone claims that the trial court should have exercised its discretion and awarded her child support to insure a stable, consistent standard of living for Christy. However, at no time during the trial did Stone ask for child support payments from Sobolik. Nor did she, in her proposed findings of fact and conclusions of law, request that Sobolik be required to pay support. In fact, Stone's proposed conclusion of law No. 9 stated as follows:

> No specific child support obligation is imposed by this court. The parties shall share equally the costs of maintenance. Hugh A. Sobolik shall obtain and pay for health insurance coverage for Christy Rae Sobolik, with costs not covered by health insurance to be shared equally by the parties.

2. Stone also argues SDCL 25–5–10 provides that the mother of an illegitimate minor child is entitled to its custody prior to a court determining to the contrary. We disagree. *See Pribbenow v. Van Sambeek*, 418 N.W.2d 626 (S.D. 1988). Further, under SDCL 25–6–1, through

Sobolik's public acknowledgment of Christy as his daughter, and through accepting her into his family and treating her as a legitimate child, she was deemed legitimate from the time of her birth.

Therefore, Stone cannot properly now object to the lower court's adoption of her own proposal. Furthermore, under SDCL 15–26A–8, there must be a specific motion, request for finding, offer, or objection before a matter may be reviewed on appeal. *Burke v. Lead–Deadwood Sch. Dist. No. 40–1,* 347 N.W.2d 343 (S.D.1984). Here, there is no record of any motion, request, offer or objection which might give Stone a basis to now claim that there should be child support paid to her. Additionally, there was no evidence in the record as to the income of Sobolik for us to consider. (We need not address whether Stone is entitled to child support under SDCL 25–7–7, since that was not argued below. We do not address issues raised for the first time on appeal. *Midstates Exc. v. Farmers & Merchants Bk,* 410 N.W.2d 190 (S.D.1987); *Mayrose v. Fendrich,* 347 N.W.2d 585 (S.D. 1984).

Affirmed.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON, J., concurs with writing.

SABERS, J., concurs in result without writing.

HENDERSON, Justice (concurring).

Appellant Stone's proposed findings of fact and conclusions of law are found at pages 28–34 of the settled record. Per Conclusion of Law 3 thereof, appellant Stone concedes that both parents are fit and proper persons to have the care, custody, and control of infant Christy. Conclusions of Law 4 and 5 thereof reflect a request for primary custody in the mother, appellant, with Conclusion of Law 6 advocating a child custody sharing arrangement. As I read appellant Stone's brief, I am struck with this language:

> In order to assure that the child will continue to enjoy the benefits of the love and care of both parents the Court should not vest total legal authority in one parent. Rather joint legal custody would encourage collaboration in the orderly discharge of parental duties with

the Court retaining jurisdiction to be able to modify the decree in the event of interference or obstructive tactics on the part of either parent seeking his or her own convenience at the expense of the best interest of the child. *Re: Marriage of Bolin,* 336 N.W.2d 441 (Iowa 1983). Therefore, the advocacy for primary custody in the proposed conclusions of law are out of sync with the legal base as I have incorporated above (*i.e.,* vesting joint legal custody). As I would theorize a situation which could eventualize in other cases, there might well be either primary legal custody or joint legal custody and still a custody sharing arrangement might exist.

Lastly, I wish to mention that the judgment appends, as Exhibit A, a most detailed recitation of the child custody sharing arrangement for the year 1987. The Honorable Circuit Judge Heck appears to have adopted, literally, the child custody sharing arrangement dates as proposed by appellant mother on page 34 of the settled record, same being Exhibit A attached to appellant mother's proposed findings of fact and conclusions of law. Surely, then, the extensive child custody arrangement adopted by the court must be satisfactory with appellant mother.