Verna L. YARNALL, Plaintiff and Appellant,

v.

Rick A. YARNALL, Defendant and Appellee.

No. 16822.

Supreme Court of South Dakota.

Considered on Briefs April 23, 1990.

Decided Aug. 29, 1990.

---

Sidney B. Strange of Strange and Palmer, Sioux Falls, for appellee.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for appellant.

Patrick Schroeder, Public Defender's Office, Sioux Falls, for Yarnall children.

McKEEVER, Circuit Judge.

Verna L. Yarnall (mother), appeals from an order of the trial court which modified the original divorce decree by changing custody of the parties' minor children from her to Rick A. Yarnall (father). We affirm.

## FACTS

Mother and father were divorced in 1984. By way of a written stipulation, which was incorporated by the trial court into the final decree of divorce, the parties were awarded joint custody of their two daughters, Jessica, born March 2, 1980, and Kristi, born February 23, 1981. It further specified that the mother had the actual day-to-day physical custody of the two children while the father was awarded liberal and extensive visitation rights with his daughters. The court-adopted stipulation also provided that neither party shall do anything to estrange the children from the other or which will hamper the natural development of the love and affection of the children for each parent.

The record is permeated with father's complaints of visitation denials, visitation interruptions, denial of contact with the children on holidays, and other allegations of mother's refusal to cooperate during the five-year period since the divorce. During that time, several hearings have been held relating to the father's request for judicial assistance in exercising his visitation rights, and the mother has twice been held in contempt of court for her actions inhibiting visitation. The father had filed several motions for change of custody and final hearing was set for May 18, 1988.

Prior to the hearing, the father and mother met with clinical psychologists. These psychologists prepared an extensive psychological evaluation containing several recommendations to assist the parties in resolving their differences. Both mother and father agreed at the May 18, 1988, hearing to be bound by these recommendations, and the father's motion for change of custody was held in abeyance.

The psychotherapy embraced by both the mother and father was to aid them in achieving the following goals: (1) to be fully and consistently aware of how their behavior was harming the children; (2) to overcome their preoccupation with each other; and (3) to alleviate the frustration felt by the parents and the court. It was also part of the general stipulation that a therapist be engaged for each party, includ-

ing the children, to meet periodically and report directly to the trial court.

Each party selected a mental health professional to assist in the implementation of the recommendations. A separate professional was also selected to assist the children. This "team" of mental health professionals submitted monthly reports to the trial court from June 1988 through March 1989. In mid-March 1989, the trial court met with the team of mental health professionals and received their oral report. In a letter dated March 23, 1989, the trial court detailed the unanimous opinion of the team regarding the treatment that they had made to date. In brief summary, according to the team, the girls had been emotionally damaged and were continuing to be damaged by the lack of relationship with their father due to their learned hatred of him; their attitude and resulting feelings about their father had resulted primarily from their mother's verbal and nonverbal communications; these attitudes and feelings would result in future serious emotional damage if not changed; and, the treatment to accomplish this end had not been fruitful due to the mother's less-than-enthusiastic cooperation with it.

A full trial on the custody issue was held on June 15 and 16 and on July 20, 1989. The trial court heard testimony of the parties, their witnesses and the three mental health professionals who comprised the "team" formed as a result of the parties' mutual agreement.

After hearing all the evidence, the trial judge concluded that it was in the best interest of the children that custody be changed to the father, with the mother having the visitation rights formerly possessed by the father.

## ISSUE

DID THE TRIAL COURT ABUSE ITS DISCRETION IN DETERMINING THAT THE BEST INTERESTS OF THE CHILDREN REQUIRED A CHANGE OF CUSTODY?

## SCOPE OF REVIEW

In a case where the original decree of divorce was based upon an agreement between the parties, the party seeking modification is not required to show a substantial change of circumstance. *Olson v. Olson*, 438 N.W.2d 544 (S.D.1989); *Mayer v. Mayer*, 397 N.W.2d 638, 640 (S.D.1986); *Kolb v. Kolb*, 324 N.W.2d 279, 283 (S.D. 1982).

SDCL 15–6–52(a) provides: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." We have previously interpreted this statute saying: " '[T]he credibility of the witnesses and weight to be accorded their testimony is for the trial court and we accept that version of the evidence including any reasonable inferences therefrom which are favorable to the trial court's determination.' " *Schutterle v. Schutterle*, 260 N.W.2d 341, 347 (S.D.1977) (brackets in original) (quoting *Larson v. Syverson*, 84 S.D. 31, 33, 166 N.W.2d 424, 425 (1969)); *see also Watt v. Watt*, 312 N.W.2d 707, 710 (S.D.1981).

SDCL 25–4–45 states: "In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same." We have previously interpreted this statute saying: "SDCL 25–4–45 has been held to leave broad discretion in the trial court to determine which parent in a divorce action shall be given custody of their children and that decision will be reversed only for a clear abuse of discretion." *Kolb, supra*, at 283; *See Mayer, supra*, at 640; *Williams v. Williams*, 425 N.W.2d 390, 393 (S.D.1988).

The primary consideration for the court's determination is what is in the best interest of the children. SDCL 30–27–19; *Peterson v. Peterson*, 449 N.W.2d 835 (S.D. 1989); *Nauman v. Nauman*, 445 N.W.2d 38 (S.D.1989). In determining the best interest of the children, the court must be guided by what appears from all the facts and circumstances to be in the best interest of the children's temporal, mental and mor-

al welfare. *Peterson, supra,* at 837; *Jasper v. Jasper,* 351 N.W.2d 114, 116 (S.D. 1984); *Flint v. Flint,* 334 N.W.2d 680, 681–82 (S.D.1983); *Matter of Ehlen,* 303 N.W.2d 808, 810 (S.D.1981); *Haskell v. Haskell,* 279 N.W.2d 903, 906 (S.D.1979); *Isaak v. Isaak,* 278 N.W.2d 445, 446 (S.D. 1979); *Holforty v. Holforty,* 272 N.W.2d 810, 812 (S.D.1978). "It is the trial court's duty to see that the children are protected at every turn." *Jasper, supra,* at 117; *Langerman v. Langerman,* 336 N.W.2d 669, 671 (S.D.1983); *Matter of M.B.,* 288 N.W.2d 773, 775 (S.D.1980). Given the focus on the children's best interest, circumstances may operate to defeat the custody preference of a parent. *Langerman, supra.* The children's welfare must be considered over the legal rights and claims of the parents. *Sobolik v. Stone,* 420 N.W.2d 764, 765–66 (S.D.1988); *Huckfeldt v. Huckfeldt,* 82 S.D. 344, 347, 146 N.W.2d 57, 58 (1966); *Hoaas v. Hoaas,* 75 S.D. 55, 59, 59 N.W.2d 254, 256 (1953). The parents' personal wishes and desires must yield to what the court in the discharge of its duty regards as the children's best interest. *Sobolik, supra; Huckfeldt, supra; Ulver v. Ulver,* 76 S.D. 371, 373, 78 N.W.2d 830, 831–32 (1956).

### DECISION

■ The original decree of divorce in this case established custody and visitation rights by adopting into it a stipulation of the parties. The trial court found that a change of custody to the father, with visitation rights to the mother, to be in order after considering all the evidence at trial. We now proceed to inquire if that decision constitutes an abuse of discretion.

The trial record reveals that the mother has been diligent in her efforts to offer her children the opportunity to participate, and further provide the necessary support for them to be successful in their scholastic, extracurricular and church activities. This speaks well for her as a parent. Unfortunately, the record is also replete with numerous instances that reflect either her outright refusal or her inability to acknowledge that her negative emotions towards the father are resulting in damage, not only to her, but also to the two human beings she loves so much, her daughters.

The evidence established that the mother had two contempt of court citations due to her failure to cooperate with the father's court-ordered visitation rights. Even after agreeing to the recommendation made by the mental health professionals, she failed to grasp the reality of what was needed from her to prevent this emotional damage to the children from occurring. The testimony of all three members of the professional mental health team provided support for the court's conclusions that the girls hated their father; that this hatred was damaging to them; that it had, for the most part, been taught them by the verbal and nonverbal communications of their mother; and, they will end up with major emotional problems in adulthood unless their attitude can be changed in order to allow them to form a normal relationship with their father.

Based on this information, the trial court determined that the children would never be well until their mother awakened to the reality of her need for a change of her attitude towards the father; and, that it was necessary for her to be willing and able to acknowledge her need to change and to then direct her efforts toward accomplishing the goals of the health professionals. At the time of the trial she had not done this. Consequently, the trial court granted the motion for change of custody.

The record as briefly discussed above, including any reasonable inferences therefrom, reflects that the record contains a substantial body of evidence to support the trial judge's determination. Therefore, we hold that he did not abuse his discretion in making that determination.

The function of this court is to examine the law unemotionally, but the law is not without feeling. Consequently, this court feels compelled to add its voice to that of the trial judge and the health professionals to implore both the father and mother to redouble their efforts to control their feelings and bring them in line with reason. If

either is unable to do this for their own well-being, then they should at least do it for the sake of their two young daughters. It is the children's future happiness which is directly contingent on the emotional and spiritual help of *both* their parents. It is only they who are in a position to make the necessary decision to love their children so as to avert further damage and commence the healing process of their past hurts.

## ATTORNEY'S FEES

Both parties have filed affidavits itemizing the costs incurred and legal services rendered in this matter. *State ex rel. V.K.H. v. S.W.*, 442 N.W.2d 920 (S.D.1989); *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D. 1985). After due consideration, we decline to award attorney's fees to either party.

Affirmed.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

McKEEVER, Circuit Judge, sitting for SABERS, J., disqualified.

HENDERSON, Justice (concurring in result).

I concur in the result of this opinion, i.e., that the trial court should be affirmed as this mother, through her hatred towards the father, has damaged these children. Further emotional damage would result if this conduct and attitude was not deterred. "Honor thy father and mother," one of the Ten Commandments, is unknown to her in real life application. Exodus, ch. 20, v. 12. Indeed, it was for the best interests of these children to be awarded to the father. Love—not hatred—should be the credo of parents to their offspring. "Like arrows are in the hand of the warrior, are the sons [children] of one's youth. Happy the man [woman] whose quiver is filled with them." Psalm 127:3–5.

I cannot agree, however, with the continued approval of *Kolb*, and its progeny, as a continuing theory of evidentiary proof, for all of those reasons cited in my dissent therein. *Kolb* and its progeny is, in my opinion, bad law.