**Suzanne M. KORZAN, Plaintiff and Appellant,**

v.

**Floyd J. KORZAN, Defendant and Appellee.**

No. 17588.

Supreme Court of South Dakota.

Submitted on Briefs Feb. 12, 1992.

Decided Aug. 19, 1992.

---

John F. Cogley, Morgan, Theeler, Cogley & Petersen, Mitchell, for plaintiff and appellant.

Robert R. Schaub, Larson, Sundall, Larson, Schaub & Fox, P.C., Chamberlain, for defendant and appellee.

MILLER, Chief Justice.

Suzanne M. Korzan (Suzanne) appeals the property settlement portion of her decree of divorce from Floyd J. Korzan (Floyd). We affirm.

### FACTS

Floyd was born in 1916 and married his first wife Rita in 1948. Floyd and Rita had four children and accumulated a significant amount of land. Rita died in 1957. In June 1963, Floyd purchased 520 acres of land from his brother on a contract for deed. Floyd put $1,200 down and promised to pay $1,000 per year for the next eighteen years. Floyd completed payment on the contract before 1981.

Floyd and Suzanne were married in December of 1963. Floyd was 47 and Suzanne was 25. The trial court found that Suzanne had a negative net worth at the time of the marriage. Floyd and Suzanne had five children. Floyd retired in 1976 and sold his livestock and machinery and began renting the land. He inherited $48,000 in 1980 and used the money to pay debts.

Suzanne left Floyd approximately ten times during the marriage. During their final separation, Suzanne purchased a house in Mitchell, which the trial court valued at $18,000. Suzanne also initiated divorce actions several times during the marriage. Finally, in 1991, Floyd and Suzanne agreed to divorce on mutual grounds of irreconcilable differences.

Including attorney's fees, the trial court found that Floyd had debts of $6,400 and

Suzanne had debts of $16,643. The trial court found that Floyd had provided interim support to Suzanne and the children in the amount of $44,298. Floyd grossed $13,725 per year from land rent. Of that amount he had a net rental income of $5,615 in 1988 and $3,300 in 1989. Floyd also received $316 per month from Social Security ($3,792 per year).

Suzanne earned $500 per month babysitting, $100 per month from a paper route, $50 per month rent from her son, and $100 per month from house cleaning ($9,000 per year). She had rooms in her house that she could rent for $305 per month. At the time of the trial court's findings of fact there were no tenants in those rooms.

The trial court concluded that the 520 acres purchased on the contract for deed and the house in Mitchell were marital property. The trial court decided all other real property was not marital property. The trial court also concluded that "[b]ecause [Suzanne] was absent from the home for approximately one-half of the time of the marriage; such absence contributed to an inability of [Floyd] to further accumulate equity or assets of the parties."

The trial court decided Suzanne was entitled to $18,300 of the value of the land purchased on the contract for deed, to be paid in equal installments over seven years. The trial court specifically ordered the obligation was to be repaid without interest. The trial court ordered that Suzanne would receive the house in Mitchell, but would remain solely responsible for the debt on the house. The trial court found there was $4,782 equity in the house and that one-half of that equity belonged to Floyd. The trial court ordered Floyd to reduce his payments to Suzanne by $28.46 per month for the seven years noted above. The trial court ordered Floyd to pay Suzanne $1,500 to help with her attorney's fees.

## WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DIVIDING THE MARITAL PROPERTY.

Suzanne contends the trial court abused its discretion in dividing the marital

property. The trial court is required to make an equitable division of property and its decision will not be reversed unless it clearly appears there was an abuse of discretion. *Nelson v. Nelson,* 454 N.W.2d 533, 537 (S.D.1990); *Peterson v. Peterson,* 449 N.W.2d 835, 839 (S.D.1989). In making an equitable division of the property the trial court is to consider the duration of the marriage, the value of the property of each party, the age of the parties, their health and competency to earn a living, and the contribution each has made to the accumulation of marital property. *Nelson,* 454 N.W.2d at 537; *Peterson,* 449 N.W.2d at 839.

The trial court decided that only two items of real property were part of the marital estate. These were the 520 acres purchased shortly before the marriage and the home purchased in Mitchell during one of the separations. The trial court found they had $4,782 equity in the Mitchell home. The trial court found that the land was worth $150 per acre (520 × $150 = $78,000). Floyd had paid $1,200 down on the land prior to the marriage. The trial court concluded that the $1,200 downpayment should be deleted from the value of the marital estate ($78,000 − $1,200 = $76,800).* Thus, the total marital estate was valued at $81,582 ($76,800 + $4,782 = $81,582).

The trial court awarded Suzanne half the equity in the Mitchell home ($2,391) and approximately one-quarter of the value of the 520 acres ($18,300). In total, Suzanne received $20,691 in property settlement for marital real estate.

The trial court awarded Floyd one-half the equity in the Mitchell home ($2,391) and approximately three-quarters of the value of the 520 acres ($58,500). In total, Floyd received $60,891 of the marital estate.

In total, Suzanne received 25.4 percent of the total marital estate. Conversely, Floyd was awarded 74.6 percent of the total marital estate.

* The trial court's handling of the $1,200 down-payment will be discussed later in this opinion.

1. *Whether the trial court abused its discretion in considering the effect of the parties' separations.*

The trial court concluded that Suzanne's extended absences from the marital home had a negative impact on the accumulation of marital assets. The trial court is clearly authorized and directed to consider the contribution of each party to the accumulation of assets. *Nelson*, 454 N.W.2d at 537; *Peterson*, 449 N.W.2d at 839. Suzanne contends that the trial court was wrong in finding that her contribution to the accumulation of assets was "minimal." The trial court's findings of fact will not be set aside unless clearly erroneous. SDCL 15–6–52(a). *In Interest of A.D.*, 416 N.W.2d 264 (S.D.1987).

Suzanne testified extensively about the contributions she made to the marriage. She described her cooking, cleaning, gardening, and childrearing. On the other hand, it was undisputed that Suzanne had left the marital home on approximately ten occasions during the marriage. Evidence showed that Floyd provided support to Suzanne and the children during these separations.

The trial court found that Suzanne's separations from Floyd had a negative impact on the marital estate. The trial court acknowledged that Suzanne cared for the children, cooked, cleaned, and gardened. However, for approximately one-half of the marriage she also maintained a second household with its attendant expenses. The trial court found that if they had maintained only one home during the marriage they would have accumulated more marital property. In light of all the evidence, the trial court was not clearly erroneous in finding that Suzanne's contribution to the accumulation of marital property was minimal.

2. *Whether the trial court was clearly erroneous in finding that Floyd had' provided interim support of $44,298.*

Suzanne contests the trial court's finding that Floyd provided $44,298 in interim support to her and the children. She outlines the documentary evidence before the trial court and notes that it did not total $44,298. Floyd testified about each category of support he provided during the separation. After judging the credibility of the witnesses the trial court found that Floyd had provided $44,298 in interim support. The trial court's resolution of that fact issue is entitled to deference. SDCL 15–6–52(a). *See Insurance Agents, Inc. v. Zimmerman*, 381 N.W.2d 218 (S.D.1986). The finding was not clearly erroneous.

*Summary*

The trial court considered the relevant factors and found that Floyd is 75 years old and in poor health, while Suzanne is 54 years old and in good health. Floyd is retired and unable to work because of health problems. Suzanne is currently employed in various jobs and is likely to be able to continue to earn a living for some time in the future. Suzanne brought no assets into the marriage. During the marriage, Suzanne moved out of the marital home on numerous occasions resulting in additional expenses to the marital estate. The trial court found that more assets would have been accumulated if Suzanne had not chosen to maintain a separate household. Thus, all of the factors to be considered by the trial judge support the decision in this case. The trial court did not abuse its discretion in dividing the marital property.

## WHETHER THE TRIAL COURT ERRED BY NOT REQUIRING FLOYD TO PAY INTEREST ON THE SEVEN YEARS OF PAYMENTS DUE TO SUZANNE.

In *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979), we discussed the issue of interest on deferred divorce property settlements and said that a trial court "could properly set an interest rate on deferred payments at a rate lower than the going rate if the lower rate is an integral part of the overall plan for property division." *Id.* at 444.

In this case the trial court specifically ordered that Floyd should not pay interest on the deferred property settlement. It is

clear that the trial court's overall plan contemplated that Floyd would not pay interest for the seven years of the settlement payoff. *See Balvin v. Balvin*, 301 N.W.2d 678 (S.D.1981) (remanded where it was unclear from the record whether the absence of interest was part of the trial court's overall plan or merely an oversight). Thus, the trial court's decision did not constitute error.

## WHETHER THE TRIAL COURT'S HANDLING OF THE $1,200 DOWNPAYMENT ON THE 520 ACRES OF LAND WAS AN ABUSE OF DISCRETION.

■ The trial court arrived at an overall plan of property division in which Suzanne received 25 percent of the marital estate. After issuing its memorandum opinion, the trial court learned that its calculation of the value of the 520 acres was based on $145 per acre rather than the correct value, $150 per acre. It was also brought to the trial court's attention that it had failed to take into account the $1,200 downpayment Floyd made on the 520 acres prior to his marriage to Suzanne. The trial court corrected its calculations and decided that the $1,200 downpayment should have been subtracted from the value of the marital estate. The trial court amended its opinion to reflect the correct valuation of the land. It also subtracted $1,200, the amount of the downpayment, directly from Suzanne's portion of the marital estate.

■ Suzanne argues that the trial court abused its discretion when it subtracted the $1,200 from her portion of the property division. We do not see an abuse of discretion. Clearly, the trial court's overall decision was that Suzanne was entitled to 25 percent of the marital estate. The trial court became aware of two mistakes in its property division calculations. It corrected those calculation errors and amended its opinion so that Suzanne would still receive 25 percent of the marital estate. When reviewing marital property divisions we will not bind the trial court to any mathematical formula. *See, e.g., Martin v. Martin*, 358 N.W.2d 793, 797 (S.D.1984). *See also* SDCL 25–4–44 and 25–4–45.1. The trial court did not abuse its discretion in

revising its opinion to maintain the overall property division it had decided was equitable.

AMUNDSON, J., concurs.

HENDERSON, J., concurs specially.

SABERS, J., dissents.

WUEST, J., disqualified.

HENDERSON, Justice (specially concurring).

Judge Ronald Miller's division of property is not as inequitable as the dissent would have the reader believe. Incorporated into the formal decision (Findings of Fact and Conclusions of Law) dated May 15, 1991, is this statement in a Memorandum Opinion dated November 1, 1991:

> Concerning contribution to the accumulation or value of assets, the plaintiff contributed as a mother and housewife and would ordinarily be entitled to half the value considering a 27–year marriage. However, she was absent from the home for a little less than half the time during the marriage, and such absence was not a contributing factor and may, in fact, have contributed to an inability to further accumulate equity or assets for the parties: and, as a result, the Court feels the plaintiff is only entitled to one-half of what would ordinarily be half the gain attributable to the value of the real estate during the marriage which means plaintiff's share of the real estate on dissolution of the marriage is $18,850, which the defendant will pay over a period of seven years in equal monthly installments of $224.40 without interest.

The facts indicate that Suzanne was not a stable marriage partner. Suzanne left the house for *years* at a time and on fifteen different occasions. Here, Floyd raised the children from his first marriage. These children helped him around the farm before his marriage to Suzanne and, also, after his marriage to Suzanne.

In this case, the major issue seems to be: How does the trial judge award the property Floyd brought into the marriage? In decision after decision before this Court,

we have held it is in the trial court's discretion to exclude premarital property. *See also, Garnos v. Garnos,* 376 N.W.2d 571 (S.D.1985) (15 years of marriage; excluded $570,000 value of gifts from husband's parents and this Court affirmed); *Balvin v. Balvin,* 301 N.W.2d 678 (S.D.1981) (29 years of marriage; excluded farm given to husband; this Court affirmed); *Andera v. Andera,* 277 N.W.2d 725 (S.D.1979) (18 years of marriage; trial court excluded a farm sold by mother of husband—to husband—at below market value).

In light of these decisions and the pattern of conduct of the wife: Leave the home, leave the home, leave the family, leave the family, it is understandable why Judge Miller considered the various equities in excluding the premarital property.

Floyd Korzan was 75 years of age when the Decree of Divorce was entered. Judge Miller found in Finding of Fact No. XXX that: "Floyd's health is poor because of his heart problems and arthritis." Per Findings of Fact No. XXIX, Judge Miller found "Suzanne's health is good." Judge Miller also found in his Findings of Fact:

### VI.

Floyd's parents gave him the N ½ of Section 21 on 04–05–50. This had been homesteaded by Floyd's Grandparents.

### VII.

Floyd inherited in May 1953, the SW ¼ of Section 22 from his Father.

### VIII.

On October 15, 1953, Floyd purchased the S ½ SW ¼ of Section 16 with money his first wife earned while working for the IRS prior to her marriage.

### IX.

Floyd's first wife died in January of 1957.

### X.

In June of 1963, Floyd purchased 520 acres from his brother on the terms of $1200 down and $1000 a year for 18 years at no interest.

There is no question Floyd's contributions far exceed the contributions of Suzanne. Justice Sabers' percentage thesis falls—perforce. Two other facts militate in Floyd's favor: When he married Suzanne, he had over 100 cattle; in 1980, he inherited $48,000 from the Helma Estate. All are now gone. Testimony revealed Floyd spent over $40,000 maintaining a separate residence for Suzanne.

We should not seek reasons to reverse. Suzanne bears the burden to establish error committed by Judge Miller (abuse of discretion). *Pearson v. Pearson,* 312 N.W.2d 34 (S.D.1981). There is no reversible error in this case and I join the majority opinion because it is just.

SABERS, Justice (dissenting).

Floyd and Suzanne were married in 1963. Floyd had some money. Suzanne did not. They had five children despite a troubled marriage and frequent separations. Now, almost 30 years later, they are divorced and Suzanne is awarded 25.4 percent of the "marital estate." This amounts to only $20,691 in contrast to Floyd's division of the "marital estate" of $60,891.

To make matters worse, Floyd receives the land (520 acres) *now* and is permitted to pay Suzanne *later.* In fact, he may pay over a period of seven years without any interest whatsoever. This reduces the real value of her award even further. *Lien v. Lien,* 278 N.W.2d 436, 444 (S.D.1979).

To make matters even worse, the trial court determined that an even greater amount of property (565 acres) owned by Floyd before the marriage was "non-marital" property. Suzanne receives none of it. The net effect of this determination is to reduce Suzanne's award to about 10 percent of the total property owned by the parties. In a recent and somewhat similar case, *Johnson v. Johnson,* 471 N.W.2d 156 (S.D.1991), we unanimously reversed a trial court property award for wife where she received less than 20% of the property. The opinion by Justice Amundson noted

that although "the trial court's division of property is not bound by any mathematical formula," "[t]he division of property appears to have minimized, if not totally disregarded, the relative earning capacity of the parties." *Id.* at 160. In this case, the result is so unfair that it is like the trial court creating a pre-nuptial property agreement solely for Floyd's benefit 30 years after the marriage. We should reverse and remand for a "fair" property distribution. SDCL 25–4–44.